IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI

SINDIE S. JOHNSON,                     :        Case No. 1:24-cv-34
                                       :
                    Plaintiff,         :        Judge Matthew W. McFarland
                                       :
        v.                             :
                                       :
MCDONALD'S RESTAURANTS                 :
OF OHIO, INC.,                         :
                                       :
                    Defendant.         :

## ORDER AND OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment (Doc. 23). Plaintiff filed a Response in Opposition (Doc. 36), to which Defendant filed a Reply in Support (Doc. 37). Thus, this matter is fully briefed and ripe for the Court's review. For the following reasons, Defendant's Motion for Summary Judgment (Doc. 23) is **GRANTED**.

## BACKGROUND

Plaintiff Sindie Johnson held several roles with Defendant McDonald's Restaurants of Ohio, Inc., over her four-decade career with the fast-food company. (Plaintiff's Dep., Doc. 24, Pg. ID 155, 178.) Plaintiff first worked as a crew person. (*Id.* at Pg. ID 155.) More recently, from June 2019 through around July 2022, Plaintiff worked as the General Manager of McDonald's Liberty restaurant. (*Id.* at Pg. ID 225-29.) While serving in this role at Liberty, Plaintiff was directly supervised by Joey Somera—an Operations Consultant who collaborated with General Managers to help achieve

performance targets. (*Id*. at Pg. ID 229; Somera Decl., Doc. 26-2, Pg. ID 615-16.) Somera, in turn, reported to Crystal Haught—the Operations Manager who oversaw the operations of more than twenty restaurants within the region. (Plaintiff's Dep., Doc. 24, Pg. ID 229; Haught Decl., Doc. 26-1, Pg. ID 609-10.)

In July 2022, Plaintiff learned that she would need surgery. (Plaintiff's Dep., Doc. 24, Pg. ID 271-72.) She conveyed this update to Somera sometime between July 13 and July 27 of 2022. (*Id*. at Pg. ID 280-81.) Plaintiff also applied for short-term disability on July 28, 2022. (*Id*. at Pg. ID 282.) Sometime during this July timeframe, Plaintiff was told that she would be working at the Breiel restaurant but was also informed that she would help out with the Beckett and Batavia restaurants. (*Id*. at Pg. ID 232-33.)

A vacancy for the General Manager position at Defendant's Batavia restaurant became available in June or July 2022. (Haught Decl., Doc. 26-1, Pg. ID 610.) According to Haught, she decided to offer to transfer Plaintiff from Liberty to Batavia due to Plaintiff's "significant experience, strong performance, employee training skills, and knowledge as a General Manager." (*Id*. at Pg. ID 611.) In line with this decision, Haught instructed Somera to discuss the transfer with Plaintiff. (*Id*.) At some point during the end of July or early August, Somera and Haught informed Plaintiff that her profile would be moved to Batavia as the General Manager. (Plaintiff's Dep., Doc. 24, Pg. ID 234-35.) Hearing this news, Plaintiff mumbled under her breath: "so I'm working for a franchise when I return." (*Id*. at Pg. ID 234.) Haught avers that she did not know that the Batavia restaurant would be sold at the time she made the decision to transfer Plaintiff. (Haught Decl., Doc. 26-1, Pg. ID 611.) Similarly, Somera declares that he was unaware that Batavia would be

2

sold at the time he received instructions from Haught. (Somera Decl., Doc. 26-2, Pg. ID 616.) From Defendant's perspective, Plaintiff's transfer to Batavia was effective on August 1, 2022. (Haught Decl., Doc. 26-1, Pg. ID 611; Transfer, Doc. 26-1, Pg. ID 613.) Ultimately, Plaintiff worked "basically like a crew person" for two days—August 21 and August 23 of 2022—at the Batavia restaurant before taking leave to address her medical situation. (Plaintiff's Dep., Doc. 24, Pg. ID 230-31.)

Then, on November 14, 2022, Haught and a Human Resources Manager notified Plaintiff that the Batavia restaurant would be sold by the end of the month and that Plaintiff's termination would be effective on November 30, 2022. (Molina Decl., Doc. 26-3, Pg. ID 620.) Every employee of the Batavia restaurant was terminated on November 30, 2022, due to this sale. (*Id.*) While the other employees of the Batavia restaurant were hired by the new owner, Plaintiff elected not to interview with the new owner. (Plaintiff's Dep., Doc. 24, Pg. ID 319; Haught Decl., Doc. 26-1, Pg. ID 612.) There were no other General Manager positions available at Defendant's restaurants within the region at the time. (Molina Decl., Doc. 26-3, Pg. ID 620.)

On January 23, 2024, Plaintiff filed a Complaint against Defendant alleging disability discrimination and age discrimination. (Compl., Doc. 1.) Plaintiff subsequently filed an Amended Complaint (Doc. 16) in order to correct Defendant's name. (*See* Stipulation, Doc. 15.) Defendant filed a Motion for Summary Judgment on April 1, 2025. (Motion, Doc. 23.) This matter is now fully briefed and ripe for the Court's review. (*See* Response, Doc. 36; Reply, Doc. 37.)

## LAW

A court must grant summary judgment if the record "reveals that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing Fed. R. Civ. P. 56(c)). In making this determination, a court views the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party has the burden to conclusively show that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). This can be accomplished by pointing out the lack of admissible evidence to support the nonmoving party's case. *See* Fed. R. Civ. P. 56(c)(1)(B); *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001). If the moving party meets this burden, it then becomes the nonmoving party's responsibility to put forth affirmative evidence to demonstrate a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 257 (1986).

Notably, a "mere scintilla" of evidence in support of the nonmoving party's position is not enough to avoid summary judgment. *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005). To preclude summary judgment, the nonmoving party must point to probative evidence on which a jury could reasonably reach a verdict in that party's favor. *Id.* If the nonmoving party fails to make the necessary showing for an element on which it has the burden of proof, then the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

4

As confirmed by the Sixth Circuit, a court is under no obligation to search the record for genuine issues of material fact. *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996); *see also* Fed. R. Civ. P. 56(c)(3) (explaining that "the court need consider only the cited materials"). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . , the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e). "The court's duty to view the facts in the light most favorable to the nonmovant does not require or permit the court to accept mere allegations that are not supported by factual evidence." *Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009).

The undersigned's Standing Orders also require that any response in opposition to a motion for summary judgment include a response to the proposed undisputed facts that (1) states whether each fact is admitted or denied; and (2) if denied, provides citation to the supporting documentation in the record. (Standing Orders for Civil Cases, III.B.2.) Plaintiff failed to respond to Defendant's proposed undisputed facts. (*See generally* Response, Doc. 36.) A nonmovant may not rely solely on the pleadings but must present affirmative evidence supporting her claims. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). Unsworn allegations in a complaint are not considered evidence. *See Mack v. Bessner*, 512 F. Supp. 3d 784, 792 (E.D. Mich. 2021) (citing *Anderson*, 477 U.S. at 248; *Sweeting v. Schweigtzer*, No. 19-3930, 2020 WL 5822513, at *2 (6th Cir. July 31, 2020)). Additionally, "[c]onclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary

judgment." *Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Defendant argues that Plaintiff's noncompliance with the undersigned's Standing Orders entitles Defendant to summary judgment under Federal Rule of Civil Procedure 56(e)(3). (Reply, Doc. 37, Pg. ID 1148-49.) The Court finds that Plaintiff has not complied with the Standing Orders. In any event, the Court will walk through the following analysis on the merits.

## ANALYSIS

Where, like here, workplace-discrimination claims lack direct evidence of discrimination, courts apply the three-part framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, the plaintiff bears the burden of establishing a prima facie case of discrimination. *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 522 (6th Cir. 2021). Assuming the plaintiff accomplishes this, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse action." *Id*. If so, "the burden shifts back to the plaintiff to establish that the proffered reason was merely pretext for unlawful discrimination." *Id*.

The Court first turns to Plaintiff's disability discrimination claim and then considers Plaintiff's age discrimination claim. Both are subject to the similar well-traveled *McDonnell Douglas* framework. *See Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 459 (6th Cir. 2004). Finally, the Court addresses Plaintiff's recently developed claim for failure to accommodate.

### I. Disability Discrimination Claim

Plaintiff's disability discrimination claim is grounded in the Americans with Disabilities Act ("ADA"). (Am. Compl., Doc. 16, ¶¶ 18-21.) The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

#### i. Prima Facie Case

To begin, a plaintiff bears the burden of establishing that "(1) she is disabled; (2) otherwise qualified for the position, with or without reasonable accommodation; (3) suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011) (quotation omitted). However, in cases involving a reduction-in-force, the fifth prong is substituted with a heightened standard: "rather than showing that she was replaced, the plaintiff must present direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Thompson*, 985 F.3d at 522 (quotation omitted); *see also Arthur v. Am. Showa, Inc.*, 625 F. App'x 704, 707 (6th Cir. 2015) (applying modified fifth prong in ADA context).

A reduction-in-force occurs "when an employer eliminates an employee's position because of business considerations and does not replace that employee after her

discharge." *Thompson*, 985 F.3d at 522 n.6. Defendant terminated each of its Batavia-based employees—including Plaintiff—after it sold that particular restaurant. (Molina Decl., Doc. 26-3, Pg. ID 620.) Therefore, as recognized by both Plaintiff and Defendant, the reduction-in-force standard applies here. (Motion Brief, Doc. 25, Pg. ID 591-92; Response, Doc. 36, Pg. ID 1143).

The parties operate under the assumption that the first four *McDonell Douglas* prongs are satisfied. (*See* Motion Brief, Doc. 25, Pg. ID 592.) Defendant does not dispute that Plaintiff was (1) disabled, (2) qualified for her position, (3) suffered the adverse employment action of termination, and (4) that Defendant was aware of Plaintiff's disability. (*Id.*) Thus, the Court's prima facie inquiry turns on the fifth prong: whether Plaintiff has provided "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled [her out] for discharge for impermissible reasons." *Barnes v. GenCorp. Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). As the Sixth Circuit recognizes, this modified framework does not create "an undue hardship" because a plaintiff who was truly singled out for discriminatory discharge "should be able to develop enough evidence through the discovery process or otherwise to establish a prima facie case." *Id.* at 1465-66. For instance, demonstrating that the plaintiff "possessed qualifications superior to those of a [non-protected employee] working in the same position" or that "the employer made statements of a discriminatory motive" may suffice. *Id.* at 1466. "The guiding principle," at the end of the day, "is that the evidence must be sufficiently probative to allow a factfinder to believe that the employer intentionally discriminated against the plaintiff." *Geiger v. Tower Auto.*, 579 F.3d 614, 624 (6th Cir. 2009) (cleaned up).

Plaintiff does not offer any statistical evidence to support a finding that this final prong is met. Nor does Plaintiff submit evidence of similarly situated coworkers receiving more favorable treatment. It could be said that Plaintiff attempts to rely upon an allegedly discriminatory statement by a decisionmaker: Somera told her on more than one occasion that Plaintiff was "a high paid [General Manager]." (Response, Doc. 36, Pg. ID 1142; Plaintiff's Dep., Doc. 24, Pg. ID 362.) But, whether viewed alone or within the context of the entire record, this statement lacks a sufficient nexus to disability or age discrimination. And, as the Sixth Circuit highlights, "vague, ambiguous, or isolated remarks" do not suffice in this setting. *Hein v. All Am. Plywood Co.*, 232 F.3d 482, 488 (6th Cir. 2000).

The thrust of Plaintiff's argument, instead, appears to rely on a collection of purported indirect evidence of discrimination to show that Defendant decided to terminate Plaintiff due to her disability after learning that she would be on medical leave and may also need surgery. (Response, Doc. 36, Pg. ID 1142.) Certain evidence of temporal proximity can form a basis for indirect evidence in the reduction-in-force context. *See Asmo v. Keane, Inc.*, 471 F.3d 588, 593-94 (6th Cir. 2006). Though the Sixth Circuit has "generally caution[ed] against the permissibility of drawing an inference of causation from temporal proximity alone, . . . '[w]here an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.'" *Barrow v. City*

*of Cleveland*, 773 F. App'x 254, 263 (6th Cir. 2019) (quoting *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)).

Here, Plaintiff testified that, sometime between July 13 and July 27 of 2022, she notified Somera of her upcoming surgery. (Plaintiff's Dep., Doc. 24, Pg. ID 280-81.) Additionally, Plaintiff applied for short-term disability on July 28, 2022, with an expected start date of August 24, 2022. (*Id.* at Pg. ID 282-88.) Shortly thereafter, sometime in the end of July or early August of 2022, Somera and Haught notified Plaintiff that her profile would be transferred to the Batavia restaurant. (Plaintiff's Dep., Doc. 24, Pg. ID 234-35.) According to Defendant, Plaintiff was effectively transferred to Batavia on August 1, 2022. (Haught Decl., Doc. 26-1, Pg. ID 611; Transfer, Doc. 26-1, Pg. ID 613.) Then, Plaintiff was notified on November 14, 2022, that she would be terminated as of November 30, 2022. (Molina Decl., Doc. 26-3, Pg. ID 620.)

This timeline shows that approximately four months elapsed between the time Plaintiff notified Somera of her upcoming surgery and her ultimate termination. While "no other evidence is needed" when "there is a very close temporal proximity," this four-month period is too lengthy — in and of itself — to satisfy the final prima facie prong. *Taylor v. Geithner*, 703 F.3d 328, 339 (6th Cir. 2013); *Cooper v. City of North Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (explaining that discharge "four months after filing a discrimination claim is insufficient to support" an inference of retaliation); *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 449 (6th Cir. 2020) ("[A] roughly 75-day delay between [plaintiff's] protected activity and an adverse employment action is not, standing alone, a convincing case for proving causation."). Rather, for temporal proximity alone to satisfy a prima facie case,

10

the Sixth Circuit has generally demarcated a cutoff "shy of the ten-week mark." *Stein v. Atlas Indus., Inc.*, 730 F. App'x 313, 319 (6th Cir. 2018); *see also Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Sch.*, 974 F.3d 652, 664-65 (6th Cir. 2020) (collecting cases).

Plaintiff, to be sure, was notified of her profile transfer to Batavia within days of sharing that she would be having surgery and applying for short-term disability. But, Plaintiff does not point to evidence that Haught or Somera knew that Batavia would be sold before they notified Plaintiff of this profile transfer. To the contrary, Haught avers that she was not aware of the sale until October 7, 2022—months after Plaintiff was transferred. (Haught Decl., Doc. 26-1, Pg. ID 611.) Similarly, Somera declares that he was unaware that Batavia would be sold at the time he received instructions from Haught about the transfer. (Somera Decl., Doc. 26-2, Pg. ID 616.)

Plaintiff attempts to illustrate a genuine dispute of material fact by contesting that Haught actually knew about the sale before Plaintiff was transferred. (Response, Doc. 36, Pg. ID 1142-43.) In support of this claim, Plaintiff points to her conversation with Haught and Somera sometime between late July and early August of 2022 in which they informed her that her profile was being transferred to the Batavia restaurant. (Plaintiff's Dep., Doc. 24, Pg. ID 234.) Plaintiff testified that she responded with a "sarcastic remark" about "working for a franchise when I return." (*Id.*) But, as Defendant convincingly points out, even construing these facts in the light most favorable to Plaintiff, this remark by Plaintiff could have only put Haught on notice of the potential sale *after* Haught had informed Plaintiff of her transfer to Batavia. (Reply, Doc. 37, Pg. ID 1152.) Indeed, it was Haught's act of notifying Plaintiff of the transfer decision that prompted Plaintiff's remark

11

implying that the Batavia restaurant would soon be sold to a franchisor. Thus, Plaintiff fails to identify any admissible evidence that Haught or Somera knew about the sale before approaching Plaintiff about the transfer to Batavia. Mere speculation that Haught or Somera may have previously known of the sale does not suffice. *See Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003); *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005).

Plaintiff next contends that "Somera had made a promise of Plaintiff being transferred to the Breil store after her return to work." (Response, Doc. 36, Pg. ID 1142.) However, no record citation is offered for this assertion of fact. *See* Fed. R. Civ. P. 56(c)(3), (e). "The Court has no duty to 'conduct its own probing investigation of the record' on a motion for summary judgment, and it expressly declines to undertake such an effort beyond examining the record citations provided in briefing materials" on this point. *Meyrose v. Vitas Hospice Servs., LLC*, No. 19-CV-91, 2021 WL 5139478, at *8 (E.D. Ky. Nov. 3, 2021) (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992)), *aff'd*, No. 21-6124, 2022 WL 3046969 (6th Cir. Aug. 2, 2022).

To the extent Plaintiff intends to rely on her deposition testimony cited elsewhere in her Response, this testimony relates to Plaintiff being told that she would be transferred to Breil at one point in time; no mention is made of a "promise" that she would remain there for any specific amount of time. (Plaintiff's Dep., Doc. 24, Pg. ID 232.) Defendant also objects that, even if the record did bear out Plaintiff recalling a "promise" by Somera, it would amount to inadmissible hearsay. (Reply, Doc. 37, Pg. ID 1154-55.) The Court finds that, even assuming this language falls beyond the definition of hearsay

or under the opposing party statement exception, Plaintiff's line of reasoning fails to convince. Plaintiff recalls being told that she would work between Breiel, Batavia, and Beckett. (Plaintiff's Dep., Doc. 24, Pg. ID 233, 263.) Again, because Plaintiff does not point to evidence that Haught knew the Batavia restaurant would be sold before she made the decision to transfer Plaintiff, whether or not Plaintiff had previously been told about working at Breiel does not sufficiently suggest that she was singled out for discharge due to impermissible reasons.

Finally, Plaintiff asserts that her transfer to Batavia conflicts with Defendant's policy of not transferring employees to a location more than one hour away from their homes. Plaintiff, however, does not provide record evidence as to this being an official policy instituted by Defendant. At best, Plaintiff testified that she had "always heard they won't transfer you more than an hour away." (Plaintiff's Dep., Doc. 24, Pg. ID 319.) As Plaintiff does not identify the individual who made these statements, the Court is hindered in making a hearsay admissibility ruling. *See Back v. Nestle USA, Inc.*, 694 F.3d 571, 578 (6th Cir. 2012). In any event, even if this proposition were fully credited, the Court does not find this to be sufficient evidence that Plaintiff was singled out because of her disability.

Viewing the arguments and evidence together, the Court finds that Plaintiff has not shown a genuine dispute as to an issue of material fact concerning the final prima facie prong. Defendant is therefore entitled to summary judgment on this basis alone. Nevertheless, even if the Court were to continue its analysis, Plaintiff's ADA claim fails for the following reasons.

13

### ii. Legitimate Nondiscriminatory Reason

Turning to the second step, even assuming Plaintiff had made a prima facie case, Defendant articulates a legitimate nondiscriminatory reason for terminating Plaintiff: every employee at the Batavia restaurant was terminated on November 30, 2022, upon the sale of the restaurant. (Motion Brief, Doc. 25, Pg. ID 594.) *See Clark v. Rest. Growth Servs., LLC*, No. 3:24-CV-825, 2025 WL 1463159, at *7 (M.D. Tenn. May 21, 2025) (noting the closure of restaurants as a legitimate non-discriminatory reason for termination). In fact, "when work force reductions by the employer are a factor in the decision, the most common legitimate reasons for the discharge are the work force reductions." *Barnes*, 896 F.2d at 1465 (cleaned up); *see also Sullivan v. Metro Knoxville HMA, LLC*, No. 24-5531, 2025 WL 263456, at *2 (6th Cir. Jan. 22, 2025). Thus, Defendant meets its burden at this step.

### iii. Pretext

The question now becomes whether Plaintiff "present[ed] evidence from which a jury could reasonably find that the employer's proffered reason for the adverse employment action was not the real reason that it discharged her and that unlawful . . . discrimination was the true reason." *Moffat v. Wal-Mart Stores, Inc.*, 624 F. App'x 341, 347 (6th Cir. 2015). In other words, "a plaintiff must show *both* that the employer's proffered reason was not the real reason for its action, *and* that the employer's real reason was unlawful." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015); *see also Smith v. Allstate Ins. Co.*, 195 F. App'x 389, 395 (6th Cir. 2006) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993)). Arguments contesting the proffered reason for termination typically fall within one of three buckets: "(1) [the proffered reason] has no basis in fact,

14

(2) did not actually motivate the adverse employment decision, or (3) was insufficient to motivate discharge." *Moffat*, 624 F. App'x at 347. These categories are not meant to unduly restrict a court's analysis of the ultimate inquiry: "did the employer fire the employee for the stated reason or not?" *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (quotation omitted). At the summary-judgment stage, a plaintiff "need only rebut the employer's proffered rationales," not disprove them. *Moffat*, 624 F. App'x at 348.

Though not mentioning pretext by name, Plaintiff posits that "Defendant's proffered business justification for Plaintiff's assignment to Batavia is devoid of common sense and is not otherwise factually supported." (Response, Doc. 36, Pg. ID 1143.) However, Haught averred that she "offer[ed] to transfer [Plaintiff] from the Liberty restaurant to the Batavia restaurant location to fill the vacancy, based on [Plaintiff's] significant experience, strong performance, employee training skills, and knowledge as a General Manager." (Haught Decl., Doc. 26-1, Pg. ID 611.) Plaintiff, for her part, also testified that she understood Batavia to be a "priority store" that needed extra help. (Plaintiff's Dep., Doc. 24, Pg. ID 262.)

Plaintiff insists that a factual issue remains "as to why Defendant elected to claim that Plaintiff was actually a Batavia store employee at the time the store was sold." (Response, Doc. 36, Pg. ID 1143.) Specifically, Plaintiff's briefing seems to appreciate that she was transferred to Batavia by early August 2022 but dismisses this as merely a "paper transfer [of] her [General Manager] profile to the store while she was out on medical leave." (*Id.* at Pg. ID 1139, 1143.) To the extent Plaintiff argues that this "paper transfer" was somehow lacking, she does not cite to sufficient record evidence to support such a

15

finding. *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002) ("Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.") (cleaned up).

Plaintiff's own deposition testimony, in contrast, evinces that she grasped the significance of the transfer. As Plaintiff testified, upon learning of her profile transfer to Batavia, she was "afraid that meant that's where I was going to be working when I returned." (Plaintiff's Dep., Doc. 24, Pg. ID 235.) This transfer also translated to a tangible impact because Plaintiff worked two days at the Batavia restaurant—albeit "basically like a crew person"—before beginning medical leave. (*Id.* at Pg. ID 230-31.) In light of her transfer to the Batavia restaurant and her subsequent work at the location for multiple days (Haught Decl., Doc. 26-1, Pg. ID 611; Transfer Sheet, Doc. 26-1, Pg. ID 613), Plaintiff has not shown a genuine issue of material fact as to whether her termination after transfer to the Batavia restaurant lacked a basis in fact or was otherwise pretextual.

Moreover, the Court pauses to reiterate that "the question [of pretext] is always whether the employer made up its stated reason to conceal intentional discrimination." *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326-27 (6th Cir. 2021) (quotation omitted). The fact that Plaintiff has not pointed to record evidence showing that Haught or Somera knew that Batavia would be sold at the time they approached Plaintiff about the transfer cuts against a finding of pretext. *See Li v. Univ. of Akron*, No. 5:21-CV-2277, 2023 WL 4133647, at *6 (N.D. Ohio June 22, 2023) ("Discharge of a qualified employee within a protected class is not inherently suspicious because it is the nature of a RIF that some

'qualified employees are going to be discharged.'") (quoting *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 896 (6th Cir. 1997)).

Finally, a review of the arguments explored in the prima facie discussion above further confirms that Plaintiff's prior arguments fail to persuade at the pretext stage. Notably, even if the temporal proximity between Plaintiff notifying Defendant of her upcoming surgery and her termination could hold water as adequate prima facie evidence of discrimination, the Sixth Circuit has been crystal clear: "temporal proximity cannot be the sole basis for finding pretext." *Donald v. Sybra, Inc.*, 667 F.3d 757, 763 (6th Cir. 2012) (citing *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001)). And, even assuming Plaintiff could point to evidence that Defendant had violated its own policy by transferring Plaintiff more than one hour away from her home, precedent instructs that "an employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 896 (6th Cir. 2020) (quotation omitted); *see also Kean v. Brinker Int'l, Inc.*, 140 F.4th 759, 776 (6th Cir. 2025) (acknowledging that failure to follow policy can still "be considered as part of the constellation of evidence").

Viewing all of the evidence together in the light most favorable to Plaintiff, the Court finds that Plaintiff has not demonstrated pretext. Accordingly, Defendant is entitled to summary judgment as to Plaintiff's disability discrimination claim.

## II.     Age Discrimination Claim

The Court now shifts to Plaintiff's age discrimination claim under the Age Discrimination in Employment Act ("ADEA"). (Am. Compl., Doc. 16, ¶¶ 22-25.) "The

ADEA prohibits an employer from discriminating against an employee 'because of such individual's age.'" *Sullivan v. Metro Knoxville HMA, LLC*, No. 24-5531, 2025 WL 263456, at *2 (6th Cir. Jan. 22, 2025) (quoting 29 U.S.C. § 623(a)(1)).

"To establish a prima facie case of age discrimination, the ADEA plaintiff must show that: (1) she was over 40 years old; (2) she suffered an adverse employment action; (3) she was qualified for the position she held; and (4) she was either replaced by a person outside the protected class or treated differently than similarly-situated individuals." *Smith v. Wrigley Mfg. Co., LLC*, 749 F. App'x 446, 448 (6th Cir. 2018) (quotation omitted). As mentioned, because this case involves a reduction-in-force, the fourth prong is modified into a required showing of "direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id.* (quotation omitted).

Again, there is no dispute that Plaintiff satisfies the first three prima facie elements. First, as Plaintiff was over the age of forty at the time of termination (Plaintiff's Dep., Doc. 24, Pg. ID 133), she falls within a protected group. *See Barnes*, 896 F.2d at 1465. Second, Plaintiff was subjected to the adverse employment action of termination. (Molina Decl., Doc. 26-3, Pg. ID 620.) And, third, Defendant does not argue that Plaintiff was unqualified. *See Barnes*, 896 F.2d at 1469 n.18.

However, Defendant contends that Plaintiff stumbles on the fourth prong, as well as at the pretext stage. (Motion Brief, Doc. 25, Pg. ID 597-98.) Plaintiff admitted during her deposition that she does not believe she was treated differently than younger employees regarding her termination. (Plaintiff's Dep., Doc. 24, Pg. ID 403-04.) And, other

18

than a few general references that she "believes that Defendant elected to terminate her due to her age" and that the circumstances show evidence of "age discrimination," Plaintiff's Response does not otherwise supply argument as to her age discrimination claim. (Response, Doc. 36, Pg. ID 1142-43.) To the extent Plaintiff fashions an argument as to her age discrimination claim, it is therefore based upon the same reasoning put forth to support her disability discrimination claim. Accordingly, for the reasons discussed earlier, Plaintiff fails to make a prima facie showing as to the last element and to pretext. And, unlike her disability discrimination claim, Plaintiff has not made any form of temporal proximity argument concerning her age discrimination claim. Thus, Defendant is entitled to summary judgment as to Plaintiff's age discrimination claim.

### III. Failure to Accommodate

Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment also claims that Defendant refused to grant Plaintiff's reasonable accommodation request for a transfer to a different location. (Response, Doc. 36, Pg. ID 1145.) But, Plaintiff never brought a claim for failure to accommodate in her Amended Complaint. (Am. Compl., Doc. 16; *see also* Reply, Doc. 37, Pg. ID 1155-56 (additionally arguing that a failure to accommodate was never mentioned in Plaintiff's EEOC charge)). Notably, Plaintiff's Amended Complaint revolves around Defendant allegedly treating Plaintiff "differently" than comparable non-disabled or younger employees—not the failure to accommodate. (Am. Compl., Doc. 16, ¶¶ 20, 24.) *See Lemieux v. Louisville Metro Gov't*, No. 3:22-CV-151, 2023 WL 8241569, at *6 (W.D. Ky. Nov. 28, 2023) (emphasizing the distinction between a failure-to-accommodate claim and a discrimination claim). Neither

19

Plaintiff's Amended Complaint nor her deposition testimony provided Defendant with "fair notice" that she would be advancing such a claim. *See Russ v. Memphis Light Gas & Water Div.*, 720 F. App'x 229, 235 (6th Cir. 2017).

"A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion." *Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (quotation omitted). Rather, "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a)." *Id.* (quotation omitted). By a similar token, "[a] plaintiff may not expand his claims to assert new theories for the first time in response to a summary judgment motion." *Nathan v. Ohio State Univ.*, 984 F. Supp. 2d 789, 810 (S.D. Ohio 2013), *aff'd*, 577 F. App'x 544 (6th Cir. 2014); *see also Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) (collecting cases). Thus, Plaintiff's novel claim for failure to accommodate is not properly before the Court.

In any case, even construing Plaintiff's arguments as potential support for the claims alleged in her Amended Complaint, the Court is not persuaded. Plaintiff does not dispute that every Batavia employee was terminated, and she does not identify any employee who received a transfer in lieu of termination. Moreover, the record shows that there were no other General Manager positions available at Defendant's restaurants within the region at the time. (Haught Decl., Doc. 26-1, Pg. ID 612.) Similarly, Plaintiff does not point to record evidence that other types of positions were available. Thus, these arguments do not support Plaintiff's claim that she was treated "differently" than

comparable non-disabled or younger employees. (Am. Compl., Doc. 16, ¶¶ 20, 24.) *See Braithwaite v. Sec'y of Dep't of Homeland Sec.*, 699 F. Supp. 2d 949, 961-62 (N.D. Ohio 2010), *aff'd sub nom. Braithwaite v. Dep't of Homeland Sec.*, 473 F. App'x 405 (6th Cir. 2012) (emphasizing that the plaintiff failed to show any vacancies or that similarly situated individuals were offered such transfers); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 459 (6th Cir. 2004). Likewise, these arguments do not suggest that Plaintiff was singled out within the reduction-in-force context. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 351 (6th Cir. 1998). For all these reasons, Plaintiff's failure-to-accommodate arguments—framed as either an independent theory for relief or as an effort to support her discrimination claims discussed above—are not well taken.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 23). Accordingly, judgment is entered in favor of Defendant on all of Plaintiff's claims. This matter is **TERMINATED** from the Court's docket.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND